**PINTARELLI v. BROGAN.**

No. 425.

District Court, D. Rhode Island.

April 24, 1946.

Harold E. Cole, of Boston, Mass., for plaintiff.

Herbert B. Barlow, of Providence, R. I., for defendant.

HARTIGAN, District Judge.

This is an action brought under the authority of section 4915, Revised Statutes, Title 35 U.S.C.A. § 63.

The complaint alleges that on February 9, 1942, the plaintiff filed in the United States Patent Office his application for letters patent, serial number 430,043 for "Locket And Similar Article," as the first, original, and sole inventor thereof; that on July 20, 1942, John M. Slain, now deceased, filed in the Patent Office his application for letters patent, serial number 451,541, for a "Locket Latch" claiming to be the first original inventor thereof, and that thereafter Elizabeth J. Slain, the surviving wife of said John M. Slain and duly appointed executrix of his will, assigned to Theresa Brogan, the defendant, the entire right, title and interest in and to said patent application, serial number 451,541, and to any and all letters patent of the United States which might be granted therefor; that on May 19, 1943, the United States Patent Office duly declared an interference No. 80,908 between said applications of Pintarelli and Slain declaring the subject matter involved in the interference to be three counts as follows:

"Count 1.

"A device of the class described comprising an outer casing embodying two shells, a field piece retained in each shell, hinge means movably connecting said shells and field pieces, each said shells and field piece having an open space therein positioned opposite each other when said field pieces are in closed position, a latch member the main portion of which is between a said field piece and a said shell, said latch member embodying a catch that projects through one said space and is cooperative with the other said open space of the adjacent field piece portion to hold said field pieces and shells in closed position, and also embodying an extension portion part of which extends substantially at right angles to another part of said extension portion.

"Count 2.

"A device of the class described comprising an outer casing embodying two shells, a field piece in each shell, hinge means mov-

ably connecting said shells and field pieces, one said shells and field piece having an opening in an intermediate portion thereof, another said field piece having a cut-out therein extending from an outside edge portion and positioned opposite said opening when said field pieces and shells are in closed position, a latch member between a said shell and a said field piece embodying a catch, said catch projecting through said cut-out outwardly beyond said field piece and cooperative with said opening of the adjacent field piece portion to hold said field pieces in closed position.

"Count 3.

"In combination a pair of members, means for hinging said members together, catch means provided on one member, the other member comprising a shell, a bezel within the shell having a wall spaced from the bottom wall of said shell and provided with an opening extending therethrough, a separate part positioned in the space between the bezel and shell and in firm engagement with said walls to prevent movement of the said separate part, said separate part being provided with a resilient protuberant latch extending through the opening in the bezel and adapted to engage with said catch means."

The complaint further alleges that the testimony was taken in deposition form on behalf of both parties to said interference and that on January 10, 1945, the Board of Interference Examiners erroneously and contrary to the law and evidence awarded originality and priority of invention of the subject matter of the interference to John M. Slain and his assignee; that on January 20, 1945, Pintarelli filed a Motion To Strike From And To Modify The Decision and Opinion of the Board of Interference Examiners and also filed a Petition For Rehearing and said Motion To Strike was denied on March 21, 1945, and said Petition For Rehearing was granted to the extent indicated in an opinion dated March 21, 1945; but the decision in favor of Slain was adhered to; that on March 27, 1945, Pintarelli filed a petition for an oral hearing of said Petition For Rehearing, and on April 3, 1945, said petition was denied by the Board of Interference Examiners.

The plaintiff prays the court to adjudge and decree that he was the true, original and first inventor of the subject matter of said Interference No. 80,908 and is entitled to receive a patent for his invention and to authorize and direct the Commissioner of Patents to issue said patent to him.

The defendant filed her answer denying that the plaintiff was the inventor as alleged.

The case was submitted to the court upon the testimony and exhibits used in the interference proceedings and upon oral testimony of five witnesses produced by the plaintiff. The depositions of three of them were before interference examiners. The testimony of the other two witnesses, Pieper and Brazil, before me was not helpful. Pieper's testimony was valueless. The substance of Brazil's testimony was that he signed Ex. BBB after tools for the click or latch had been made by Sandsea, a tool maker.

Pintarelli was employed as a foreman by the John M. Hall Company, a co-partnership consisting of Slain and the defendant, from about January 6 to April 2, 1942. He worked under Slain and testified that he never worked on lockets before he went to work for the Hall Company which had been making lockets since 1936 or 1937.

During the time that Pintarelli was employed by the Hall Company the locket in issue was produced for the market in quantity in February, 1942. Slain died before the interference proceedings were commenced. The defendant claims that Slain conceived the idea and disclosed it to Pintarelli. Pintarelli claims to have originated the idea and to have made a model in his home and to have disclosed it to Slain.

The preliminary statement of Pintarelli (Ex. 110) states that he conceived the invention on or about January 24, 1942. The preliminary statement and affidavit of the defendant made on information and belief on August 26, 1943, which was after the death of Slain, states in part that she was acquainted with Slain's business activities and "that the first drawing embodying the counts of the interference which has come to her knowledge was made in the preparation of the above-mentioned application on

April 22, 1942; that sketches were previously made but up to the present time she has been unable to obtain a record of the same; that the first written description of the invention was made in connection with the preparation of the patent application on April 22, 1942; that the invention was disclosed to the tool maker and an order given for tools January 21, 1942; the invention was made and reduced to practice January 23, 1943; and that from January 21, 1942, the inventor, John M. Slain, exercised reasonable diligence in adapting and perfecting the invention." (January 23, 1943, is obviously an error because the testimony is convincing that the locket was produced nearly one year before that date.)

The deposition of John H. Luft was used in the interference hearing on behalf of the defendant. He testified that he was given a hand-made sample of a latch (Ex. 2) by Slain in September or the early part of October, 1941.

He testified:

"Q. I show you Exhibit 2 already in the case and I will ask you if there isn't considerable difference in the shape of this latest click, 104? A. No difference. It is just for a larger locket, that is all. One is for a small locket and one is for a large one, but there is no difference otherwise.

"Q. Do you know who conceived this click that was shown you first by Mr. Slain, Exhibit 2? A. Mr. Slain himself, to the best of my knowledge.

"Q. What do you base that on? A. Because he handed it to me in his office and says, 'John, I got an idea and I have got a hand sample here for you. Go ahead and make me the tools for it.' So automatically, I assumed that the idea was Mr. Slain's because he was always figuring on new improvements for the industry."

Luft testified before me also and his testimony convinced me that John M. Slain, to whose assignee was issued patent number 2,377,816 on June 5, 1945, was the original inventor of the device in the interference which relates to a locket in which the conventional latch member is replaced by a latch or click which is formed on a separate piece, the main portion of which is held between the bezel and the locket shell.

Luft testified that Slain had been making lockets for eight or ten years and that in September or October, 1941, he asked Luft, who was a tool maker, to make the tools for the latch.

Luft told Slain he was working day and night converting for war work and that he could not make the tools then. Later he told Slain to give the order to another tool maker. Slain gave the job to Sandsea on or about January 22, 1942, after he waited for Luft for about three or four months.

Fig. 6 of the Slain patent No. 2,377,816 is the invention involved here. Fig. 5 of Pintarelli's application for letters patent No. 430,043 (Ex. A) is very similar to said Fig. 6. Both are somewhat similar to Ex. 2 which Slain showed to Luft for the purpose of having the tools made in September or October, 1941, and for which Sandsea did make the tools on an order given to him by the Hall Company on January 22, 1942, for "tools for spring catch on small heart." (Ex. 21.) Sandsea admitted that this order might have been discussed earlier with Slain. The lockets embodying the idea conveyed in Ex. 2 were produced for the market in quantity by the Hall Company in February, 1942.

Slain showed Luft Ex. 2 nearly four months before January 24, 1942, the earliest date alleged in Pintarelli's preliminary statement that he made a full size locket embodying the invention. Slain's order to Sandsea for the tools was also prior to January 24, 1942. Slain's disclosure to Luft was at least three months before Pintarelli went to work for the Hall Company.

■  It was incumbent upon Slain as the junior party (or the defendant as his assignee) to establish priority by a preponderance of evidence. Keefe v. Watson, 142 F.2d 283, 31 C.C.P.A., Patents, 1080.

■  A careful consideration of the record before the Board of Interference Examiners convinces me that they were warranted by a preponderance of evidence in awarding priority of invention of the subject matter in issue to Slain, the junior party.

At the hearing before me, in addition to the record in the Patent Office, I had the advantage of hearing the oral testimony of

284

witnesses. Luft's testimony left no doubt in my mind that Slain was the inventor of the latch. Luft is an experienced tool maker and his testimony was straightforward and convincing.

Pintarelli's oral testimony did not impress me. His testimony was evasive concerning his present interest in the patent.

Theresa Brogan testified before me as follows:

"Q. You are under subpoena by Mr. Pintarelli, are you? A. I received papers.

"Q. With respect to the preliminary statement in this case, you did sign one, did you not? A. What is a preliminary statement?

"Q. You don't know? A. I have signed so many papers.

"Q. Is it correct that you did sign a paper in this case called a preliminary statement giving dates of invention which you never read but signed without reading? A. Yes. I did not read it.

"Q. You signed it without reading it? A. Yes.

"Q. And swore to it before a notary public? A. That is right."

■ The plaintiff as a result of that testimony requests that the court rule that "a junior party or his assignee who signs and swears to a preliminary statement without reading it cannot prove any date of invention prior to his filing date of the patent application." The court denies this request because the facts in this case warrant no such ruling in order to sustain the decision of the Board of Interference Examiners.

Miss Brogan had charge of the office of the Hall Company and objected to Slain going to the expense of obtaining a patent for the latch. She also had knowledge from the company's records of bills paid to Sandsea for the tools. This information she furnished to her attorney who, undoubtedly, drafted her affidavit for the patent office proceedings.

I find that Slain made Ex. 2 in September or early October, 1941, and disclosed it to Luft.

I find that Sandsea made tools for the click or latch in January, 1942, and that Slain worked it out by combining it to operate with the casing and field pieces of a locket in the manner set forth in the interference counts and that Slain's conception of the click is a conception of the device in the interference counts.

■ In Morgan v. Daniels, 153 U.S. 120, 124, 125, 14 S.Ct. 772, 773, 38 L.Ed. 657, the court said:

"But this is something more than a mere appeal. It is an application to the court to set aside the action of one of the executive departments of the government. The one charged with the administration of the patent system had finished its investigations and made its determination with respect to the question of priority of invention. That determination gave to the defendant the exclusive rights of a patentee. A new proceeding is instituted in the courts,—a proceeding to set aside the conclusions reached by the administrative department, and to give to the plaintiff the rights there awarded to the defendant. It is something in the nature of a suit to set aside a judgment, and, as such, is not to be sustained by a mere preponderance of evidence. Butler v. Shaw, C. C., 21 P. 321, 327. It is a controversy between two individuals over a question of fact which has once been settled by a special tribunal, intrusted with full power in the premises. As such it might be well argued, were it not for the terms of this statute, that the decision of the patent office was a finality upon every matter of fact. In Johnson v. Towsley, 13 Wall. 72, 86 [20 L.Ed. 485], a case involving a contest between two claimants for land patented by the United States to one of them, it was said: 'It is fully conceded that when those officers (the local land officers) decide controverted questions of fact, in the absence of fraud, or imposition, or mistake, their decision on those questions is final, except as they may be reversed on appeal in that department.'

■ "Upon principle and authority, therefore, it must be laid down as a rule that, where the question decided in the patent office is one between contesting parties as to priority of invention, the decision there made must be accepted as controlling upon that question of fact in any subsequent suit between the same parties, unless the

contrary is established by testimony which in character and amount carries thorough conviction. Tested by that rule, the solution of this controversy is not difficult. Indeed, the variety of opinion expressed by the different officers who have examined this testimony is persuasive that the question of priority is doubtful, and, if doubtful, the decision of the patent office must control."

Judgment, therefore, may be entered for the defendant with costs.