31 C.C.P.A. (Patents)

## KEEFE v. WATSON.
### Patent Appeal No. 4857.

Court of Customs and Patent Appeals.

April 5, 1944.

O. Z. McCoy, Kwis, Hudson & Kent, and A. J. Hudson, all of Cleveland, Ohio (Watts T. Estabrook, of Washington, D. C., of counsel), for appellant.

Cameron, Kerkam & Sutton, of Washington, D. C. (Loyd H. Sutton, of Washington, D. C., of counsel), for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

GARRETT, Presiding Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Examiner of Interferences awarding priority to Watson in an interference proceeding involving a single count which reads as follows:

"A flexible rubber tire valve stem having a longitudinal through passage cross-sectionally reduced intermediate its ends to provide a seat integral with the stem and faced toward the base of said stem, a movable valve head cooperable with said seat to close said passage, a movable closure member cooperating with the outer end of said passage for normally preventing the entrance of dust and water, means operatively connecting said valve head and closure member for transmitting movement of said closure member to said valve head and means providing for the passage of air by said closure member when said closure member is depressed."

The interference was declared March 8, 1939, between an application (serial No.

136,463) of Keefe, filed April 12, 1937, for the reissue of a patent No. 2,057,195, issued October 13, 1936, on an application (serial No. 79,911) filed May 15, 1936, and an application (serial No. 103,436) of Watson, filed September 30, 1936.

█ The count being found to read upon the disclosure of Keefe's original application, he is entitled to rely upon the date of May 15, 1936, which made him the senior party. As the junior party it was incumbent upon Watson (or his assignee, Jenkins Bros. of Bridgeport, Connecticut, a corporation) to establish priority by a preponderance of evidence.

It appears that Watson died in June or July 1939 after he had filed a preliminary statement dated March 31, 1939, and before the taking of testimony in the case began. It further appears that a second statement designated "Preliminary Statement," dated February 7, 1941, signed by Bernard J. Lee, vice president of Jenkins Bros., was filed in the Patent Office apparently in support of a motion made to change the date of the first written description alleged in the statement of Watson.

In the preliminary statement of Watson disclosure of the invention to others and first drawing was claimed "during the latter part of December 1930 or the first part of January 1931"; first written description "on or about June 29, 1932," and reduction to practice "in the month of August 1932." The amendment which was sought (in support of which the statement of Lee was filed) was a claim of written description "on or about January 12, 1932," but inasmuch as it subsequently was conceded by Watson's assignee that the date of written description was immaterial the Examiner of Interferences held that the question "is moot and consideration thereof is deemed unnecessary," and that matter ceased to be an issue in the case.

Keefe in his preliminary statement claimed first drawing "on or about March 6, 1933"; first written description "on or about October 12, 1933"; first disclosure to others "on or before January 1, 1933," and first reduction to practice "on or about March 6, 1933."

The Examiner of Interferences awarded Watson conceptions on different dates, viz, "at least as early as June 29, 1932"; "In June, 1934," and "in September, 1934," and awarded him actual reduction to practice "at least as early as February 25,

1935." The general tenor of the board's decision indicates that it did not disagree with the examiner as to the evidence establishing conception on the part of Watson in June 1932, but it expressly overruled the award of conception in June 1934. It also expressly approved the finding that he was shown to have conceived in September 1934. Also, it approved the award to him of reduction to practice in February 1935.

With respect to Keefe, the purport of the decision of the Examiner of Interferences was that he had failed to prove conception and actual reduction to practice at any time prior to the filing date (May 15, 1936) of his application (serial No. 79,911) which matured into the patent No. 2,057,-195, the application for reissue of which is here involved. However, upon the theory that his decision respecting conception might be reversed on appeal he, not improperly, went further and, in effect, held that Keefe had made no showing of diligence during the period in which diligence was required. The board agreed with the findings of the Examiner of Interferences both as to nonconception and nonreduction to practice and hence made no direct reference to the matter of diligence.

Under the above holdings the award of priority was made to Watson, the junior party, because the dates awarded him were prior to Keefe's filing date.

Testimony was taken on behalf of both parties, and numerous documentary and physical exhibits were introduced in evidence, so that (although there is involved only a single count which in its terms is not particularly complicated) it has been necessary to examine an extensive record.

The Examiner of Interferences succinctly described the device in simple terms as follows:

"The subject matter of this interference relates to a flexible rubber tire valve stem. The stem has a longitudinal passage which is cross sectionally reduced at a point intermediate its ends to provide an integral valve seat. A valve member co-operates with the said seat and acts as the air valve of the stem. At the top of the stem a movable closure member co-operates with the outer end of the passage for normally preventing the entrance of dust and water. This closure member is operatively connected with the valve and transmits movement thereto."

We quote the following ruling from the decision of the board:

"The issue involved is so phrased, especially in the expression 'a movable closure member cooperating with the outer end of said passage for normally preventing the entrance of dust and water,' as to require a limited construction in order to obtain some definite idea as to the invention. The closure member must be sufficiently close to the passage as to substantially prevent the entrance of any dust and water in use. It will be noted that many types of valve stems are made of record and to construe the claim too broadly would cover such varied forms. If the claim be construed broad enough to relate to a closure member which might, because of its mere presence in the passage, prevent part of the dust and water from entering the tube, then such construction would include many types of valve stems. The Examiner has held, and we believe correctly, that the issue should not be so broadly construed.

"Having agreed with the Examiner as to the scope of the count, we are not considering many forms of the alleged invention produced in drawings and exhibits by Watson which do not accord with our reading of the claim. It is our opinion that one of the essential features of the count is the provision of a closure member for so fitting within the stem as to take the place of the usual cap on a valve stem."

We find no reason of appeal which directly or indirectly challenges the correctness of the foregoing ruling and we take it to be conceded as correct.

Appellant Keefe's reasons of appeal make various specific allegations of error, the gist of them being summarized in his brief before us as follows:

"First: The Board of Appeals accorded Watson as a date of reduction to practice, February 25, 1935, based on the oral testimony of one Edgar L. Dean, accepting as substantiation of Dean's testimony a certain document comprising a sketch and written description allegedly made by Dean, signed by Dean but otherwise unattested and uncorroborated by supporting witnesses, the same being found in the record as Watson Exhibit X.

"It is appellant's position that the Exhibit referred to does not constitute corroboration of Dean's testimony but is only a self-serving statement.

"Second: The Board of Appeals awarded to Watson a date of conception as of January 1932, based on Watson's Exhibit AA which is a letter alleged to have been written by Watson to The Jenkins Brothers Valve Company who is the assignee of the Watson application involved in this Interference. The letter referred to is dated January 12, 1932 but inasmuch as Watson's preliminary statement alleged as the date of his first written description of the invention, the month of June 1932, the Board of Appeals restricted Watson to the date alleged in his preliminary statement but held that the letter above referred to was acceptable as proof of conception and written description, in this Interference.

"It is appellant's position that this letter should not have been accepted as evidence of probative value, for certain reasons which will be pointed out in a more extended consideration of this matter.

"Third: The Board of Appeals also accorded as a date of conception to Watson, September 1934, this conclusion being based upon a certain drawing made in September 1934 which is found as Watson's Exhibit K.

"It is appellant's contention that this drawing is incomplete so far as responding to the reissue of the Interference and therefore conception of invention should not have been predicated thereon."

It will be observed that the foregoing summaries are directed to the matter of Watson's conception dates, as awarded by the board. They are immediately followed by the statement:

"Keefe, by what is considered to be competent testimony, established a date of reduction to practice in the spring of 1934 as of February or March of said year supporting evidence being largely based upon the testimony of one Lee E. Clough and based upon Keefe's Exhibits 15, 16 and 17 but the Board of Appeals finding that certain statements of Clough 'leads to confusion,' rejected Keefe's claim for reduction to practice as of the spring of 1934."

So, with respect to Keefe's allegations relative to reduction to practice, he limits himself to a period "in the spring of 1934 as of February or March of said year," and we note that in the concluding part of the first portion of his brief (the only portion touching this question), it is said: "Seventh: That Keefe is entitled to a date

for *conception* and reduction to practice as of February or March of 1934." (Italics ours.) We take it, therefore, that he abandoned his reason of appeal No. 18 in which it was alleged that the board "erred in implicitly holding that Keefe was not reasonably diligent in reducing the invention to practice," and no question of Keefe's diligence is here involved.

Under the view which we take of the case it is unnecessary for us to discuss the evidence relating to the dates awarded Watson for conception, independently of that awarded him for reduction to practice. Should it be held that Keefe actually reduced the invention to practice in February or March 1934, it is clear that he would be entitled to the award of priority on that basis. Further, if it should be found that Watson did not actually reduce the invention to practice in February 1935, Keefe (since Watson could not, upon the record, receive an award of diligence) would be entitled to the award of priority based upon constructive reduction to practice by reason of the filing date of his original application—May 15, 1936.

█ So, we confine our discussion, in the main, to the claims of the respective parties relating to actual reduction to practice, and consider first the claim of Keefe.

As has been indicated, the Examiner of Interferences and the board concurred in holding that the evidence on Keefe's behalf was not sufficient to establish either conception or reduction to practice in the spring of 1934. Keefe's reliance in this regard is based upon certain physical exhibits introduced in evidence as Keefe's exhibits Nos. 15, 16, and 17, consisting of three valve stems, and the testimony of himself and other witnesses relating thereto, including the tests claimed to have been made of them. It was held below, in substance, that the evidence was not sufficient to establish satisfactorily that the exhibits so introduced were in existence in 1934 or on any particular date, and it was further held that the tests claimed to have been made of them (assuming that they were in existence) were insufficient to meet the requirements of reduction to practice.

We have examined the testimony relating to the exhibits with much care.

Even the testimony of Keefe himself is lacking in positiveness as to dates, notwithstanding his counsel asked numerous leading questions. In general, Keefe seems to have determined his dates, first, from the fact that in 1934 he was residing on Kent Street in Akron, Ohio, having moved there April 15th of that year, and, second, from notations made in a notebook by one Lee E. Clough, who testified that he made various parts of valves for Keefe in February 1934, March 1934, and September 1935. As to the first, it appears that Keefe resided at the same place on Kent Street until in October 1937 when he moved to another location. As to the second, he does not appear to have examined but one page of the notebook, and the entry on that page seemingly related to an exhibit (No. 14) which is not relied on in this proceeding.

With respect to the testimony of Clough, upon whom Keefe principally relies for corroboration, and that of certain other witnesses whom it is unnecessary to name, we think it was correctly summarized by the Examiner of Interferences in the following statement:

"Aside from Exhibit 14, Keefe has also introduced Exhibits 15, 16 and 17 as evidence of conception and reduction to practice. Numerous witnesses testify to the existence of these exhibits in 1934 and of seeing them on an inner tube and in some cases of seeing Keefe inflate the inner tube and hold the valve in a pan of water. However without exception, these witnesses are unfamiliar with valves, saw only the external stem and rely merely on their unaided recollection for date. Such testimony is deemed wholly insufficient to establish the existence of a device which supports the count in issue as of any particular date. It is recognized that Clough has testified from his record book that he made various parts of valves for Keefe on February 10, 1934, February 12, 1934, March 14, 1934 and September 20, 1935. However Clough's testimony is indefinite as to what particular device was made at any particular time. In fact he admits that Exhibits 15, 16 and 17 could have been made from his 1935 work. His testimony, therefore, fails to corroborate the existence of these exhibits as to any particular date."

We do not question the honesty or credibility of either Keefe or Clough, but inasmuch as their testimony is so lacking in the definiteness required in interference proceedings upon vital matters, we would not be justified in overruling the concurrent holdings of the tribunals of the Patent Office respecting the questions so far discussed.

■ Furthermore, even should those holdings be overruled, there would remain the question of whether the tests made by Keefe were sufficient to meet the requirements relative to reduction to practice. The mere making of the valve stems would not of itself be a reduction to practice. A testing of them was essential.

Upon this matter, the Examiner of Interferences stated:

"* * * All that he [Keefe] did was to fill an inner tube with air having a valve attached and to immerse the valve in water. He never subjected the device to a use test on an automobile. The mere filling of a tube with air and immersing it for a short time in water, while it may be a test of a preliminary nature which might indicate whether it was worthwhile to carry on further tests, is not such a final and conclusive demonstration of the practical utility of the device as would constitute a reduction to practice. It must be noted that an important feature of the count is the prevention of dust reaching the valve parts. Certainly a test of merely inflating the tube gives no indication of whether the device would perform this function or not. Furthermore, a test aside from actual use on an automobile does not indicate how the valve would perform when subjected to the incidental vibration of an automobile in use or to its performance when subjected to the added heating and pressure of a moving automobile. Accordingly, it does not appear that reduction to practice has been established by the short and simple test."

The board said:

"* * * it is quite evident the single test for leakage of air was unsatisfactory as a test for reduction to practice of the issue which concerned prevention of dirt and water entering the valve stem."

The correctness of the findings of fact stated by the Examiner of Interferences relative to the test made is not challenged by Keefe but it is contended that such test was sufficient to meet the legal requirements.

We are unable to agree with that contention.

The device involved is something new in the valve stem art, else it would not be patentable. To be patentable, it must be shown to have practical utility and, in our opinion, the only way in which such show-ing could be made was by a test under actual service conditions.

We agree with the tribunals of the Patent Office that Keefe may not be awarded any date for conception or reduction to practice prior to the filing date of his original application—May 15, 1936.

It follows that if the device of Watson was actually reduced to practice in February 1935, as was held below, he was properly awarded priority.

A valve stem vulcanized to an inner tube was introduced in evidence as Watson's Exhibit W, and, while Keefe in his reasons of appeal alleges that the board "erred in holding that Watson's Exhibit W was *sufficiently proven,*" it does not seem to be questioned that it meets the structure of the count. (Italics ours.)

As has been stated, Watson died prior to the taking of the testimony, and the evidence relating to reduction to practice consists in the main of the testimony of Mr. E. L. Dean, one of several financial backers of Watson, together with certain documentary exhibits, particularly a drawing which Dean testified that he made and which was introduced in evidence as Watson's Exhibit X.

It appears that both Watson and Dean resided in Jonesboro, Arkansas. Dean testified that his occupation was "Farming mainly," and that he owned farms in the vicinity of Caraway, Arkansas, one of which it appears he was accustomed to visit frequently during the period here involved (the other apparently not having been "opened up" until shortly before his testimony was taken). It appears that he possessed considerable mechanical skill; that he was familiar with valve stem structures and that he became interested in the development, and later in the exploitation, of stems to be substituted for metal stems which latter, when a tube was punctured (as frequently happened on the roads over which he often drove to, from, and about his farm), tore up the tube which had been deflated as a result of the puncture. He particularly desired also a stem requiring no dust cap which could be manufactured at a reasonable cost.

The board summarized the evidence relating to Watson's reduction to practice as follows:

"With regard to the reduction to practice on the part of Watson, we have the

testimony of one Dean with regard to a valve shown in the drawing Watson Exhibit X. Dean, see Watson Exhibit Y, wrote a letter to Watson and described a capless valve stem which he thought would be of value to manufacture as contrasted with other types which evidently they had previously discussed. He especially wanted to get away from the cap on the stem and he suggested that Watson repair [the exact language in Exhibit Y is 'fix one up'] a valve so that when he came home he could mount it on a tire and if it proved satisfactory on an automobile which was running around the roads on his farm, it would be good anywhere. On Exhibit X under a date of 2/25/35 is a general description in the shape of a drawing of a capless valve stated to be designed by F. H. Watson and mounted by Dean, Belin and Chalfant on a 1935 Chevrolet coupe under a date of 2/17/35. This valve was partially described and indicated in a general sketch but no spring is present to hold the valve in place [elsewhere the board pointed out that the count does not require a spring]. The test was to determine whether a cap was necessary. According to this report, this automobile was driven around the country roads in mud and water and the results were entirely satisfactory. Great improvement was noted over similar valves. Inasmuch as this was a contemporaneous description of what allegedly occurred at the date stated, it should be given great weight."

■ The substance of appellant's contention is that there is not sufficient evidence in corroboration of Dean's testimony. Of Exhibit Y, a letter dated February 2, 1935, appellant pointed out that it is a carbon copy and that the original was not produced. As to this, it was stipulated, in substance, that a daughter of Watson, if called as a witness, would testify that she had made search for the original through all her father's papers but had been unable to find it. It was also testified by a Mr. Freer, one of Watson's counsel in this case, who had also represented him in another interference proceeding, that he had had occasion to go through Watson's files a number of times, and that he had never seen the original in those files. Under such circumstances, we think the copy was not improperly received in evidence and that it was properly given weight below. As to the drawing, Exhibit X, it is pointed out that it was signed by Dean but not otherwise attested and that it was uncorroborated by supporting witnesses.

In considering the testimony of Dean, it should be borne in mind that he does not claim to have been a joint inventor with Watson of the valve stem illustrated by Exhibit W, and his own work in the alleged reduction to practice places him somewhat in the position of a corroborating witness. We see no reason to question his credibility and entertain no doubt as to his having tested the exhibit in the manner described, nor do we find any reason to doubt that he made the drawing, Exhibit X, at the time he claims to have made it and that it is entitled to weight in connection with his other testimony in the case. Incidentally, it may be said that corroboration as to this exhibit was not, in fact, required to be made in the same manner that would have been required had it been made by the inventor himself.

Another contention made by appellant is that Watson's Exhibit W was an abandoned experiment. It appears that the tube to which it was attached, after it had been tested by Dean, was placed in an "oil house" along with other automobile tubes and that it remained there until about a year before Dean gave his testimony in the case. Dean found it there when making a search for it in response to a suggestion or request of counsel for Watson's assignee.

■ It is our view that the device was actually reduced to practice at the time found by the tribunals of the Patent Office, and, in the light of Dean's testimony concerning it, we agree with the holding below that it may not be regarded as an abandoned experiment. We think it has been clearly established that Watson was the first inventor and, therefore, in conformity with the letter and spirit of the patent laws, must be held entitled to the award of priority.

The decision of the Board of Appeals is affirmed.

Affirmed.