37 C.C.P.A.(Patents)

## SEARLE v. GLARUM et al.
### Patent Appeals No. 5632.

United States Court of Customs and
Patent Appeals.
Feb. 2, 1950.

See also, 35 C.C.P.A.Patents 1106, 167 F.2d 640.

Albert B. Griggs and A. Newton Huff, Wilmington, Del. (C. H. Biesterfeld, Wilmington, Del., of counsel), for appellant.

John F. Bergin and T. Wallace Quinn, Philadelphia, Pa., for appellees.

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL and JOHNSON, Judges.

O'CONNELL, Judge.

This is an appeal from the decision of the Board of Interference Examiners of the United States Patent Office awarding priority of invention to appellees.

The interference involves an application of appellees, No. 502,049, filed September 11, 1943, and the application of appellant, No. 607,497, filed July 27, 1945.

Three counts compose the issue. Count 1 is sufficiently illustrative and is reproduced as follows:

1. Quaternary ammonium compounds of the formula

$$\begin{array}{ccc} CH_3 & & CH_3 \\ & \diagdown \quad \diagup & \\ R & \longrightarrow N & \\ & \diagup \quad \diagdown & \\ CH_3 & & OC_6 Cl_5 \end{array}$$

wherein R is an alkyl group containing at least 8 and not more than 18 carbon atoms.

The invention relates to certain new compounds which contain the pentachlorophenate group. They are described in the brief for appellant as follows: "Despite the long names of the compounds included in the invention, they are not complex. Sodium pentachlorophenate is a well-known commercial fungicide, but it has objectionable skin-irritating properties. Searle's object was to 'cover up' its irritant characteristics by replacing the sodium atom with a quaternary ammonium grouping while retaining its fungicidal characteristics."

Both parties took testimony, filed briefs, and were represented at final hearing. As the junior party, it was incumbent upon appellant to establish priority by a preponderance of the evidence.

The testimony on behalf of appellees pertained solely to commercial activities subsequent to their filing date. Appellees were accordingly restricted to that date for conception and constructive reduction to practice. Appellees admit appellant was first to conceive. Appellant makes no claim of diligence during the critical period but relies upon a prior reduction to practice.

The sole issue before this court, therefore, is whether the evidence submitted by appellant is sufficient to establish his actual reduction to practice prior to appellees' filing date of September 11, 1943. That evidence, among other things, contains the depositions of appellant and his numerous witnesses. Most of those witnesses, at the time of the events covered by their testimony, were employees of E. I. du Pont de Nemours & Company, assignee of appellant's involved application.

The record discloses that from the middle of 1940 to April 4, 1941, appellant, working in the chemical department of his assignee, conceived and completed the preparation of three compounds which he alleges correspond to the issue of the counts. Those compounds are said to be: (1) octadecyltrimethylammonium, a species within count 1, and the specific compound of count 2; (2) "Lorol" trimethylammonium pentacholorophenate, also a species of the compound within count 1; and (3) benzyl "Lorol"

dimethylammonium pentachlorophenate, a species within count 3. Appellant alleges he made and properly named the compounds by their structure in accordance with chemical terminology.

Details of the preparation of the respective compounds of the counts are in evidence and recorded in pages of appellant's laboratory notebook, Exhibits 6, 10, and 12, each of which are signed by appellant and witnessed by his associate Dr. Long on April 25, 1941.

The three products hereinbefore described were prepared by appellant on March 27, 1941, and on March 31, 1941, he sent a portion of each of them to Jones, a co-employee, skilled chemist, and expert analyst, who made analyses thereof for chlorine. Jones found the actual chlorine content of those portions to be 31.91%, 35.26%, and 32.20%, which corresponded to appellant's calculated values of 30.72% for Exhibit 6, 35.95% for Exhibit 10, and 31.2% for Exhibit 12. On April 4, 1941, a report was made to appellant by Jones, who gave the results of his analyses as hereinbefore described.

The analytical determinations which were made by the witness Jones, and which appellant relied upon to establish identification of the three compounds prepared by appellant on March 27, 1941, show, as hereinbefore described, that the chlorine content of the samples analyzed by Jones was in each case very close to the theoretical value thereof as calculated by appellant. The chlorine analyses of the compounds are not sufficient to identify the chemical structure of the compounds as depicted by the configurations in the counts. Appellant contended, however, that the chlorine determinations were sufficient to satisfy the requirements of the counts when such determinations were taken in conjunction with other factors, such as the method of synthesis and washing to isolate the product.

The board in evaluating appellant's evidence recognized the rule that the chemical structure of a simple compound might be sufficiently identified by a partial analysis of the compound when considered and combined with the presence of other factors.

Farrington et al. v. Mikeska, 155 F.2d 412, 33 C.C.P.A., Patents, 1072, 1073. The difficulty in applying that rule to the situation in the case at bar, according to the board, was that the other factors relied upon by appellant in addition to the chlorine determinations were not established by a proper showing in the record.

Samples of the three compounds bearing appellant's designation were also submitted by appellant to others in the du Pont organization in April of 1941 and the witnesses Dr. Tisdale, Dr. Flenner, Mr. Kaberg, Mr. Goddin, and Dr. Cochran all testified they received the samples bearing appellant's designation. A portion of the sample of the compound, alleged to be defined by count 2 and sent on April 22, 1941, to the Pest Control Laboratory of the du Pont Company by appellant, is in evidence as Searle Sample A.

Appellant testified as to the reactants he used in preparing the compounds, the reaction involved, and the method he used in isolating the product. Dr. Lontz, who worked with appellant in an adjacent laboratory, testified as to what he saw in witnessing the experiments made by appellant, and Kaberg testified that he made up additional quantities of the three compounds by using the reactants appellant had designated.

The board properly stated that to establish actual reduction to practice, the testimony of an inventor must be corroborated, and that notebook records prepared by him are merely self-serving documents which, standing alone, do not effect such corroboration. Collins v. Olsen, 102 F.2d 828, 26 C.C.P.A., Patents, 1017.

The Board of Interference Examiners rendered an original decision dated December 10, 1947, and a second decision dated January 13, 1948, denying appellant's petition for reconsideration.

The board in its original decision held that although appellant's evidence contained a sufficient showing by appellant as to the utility of the compounds, and that the work done by appellant and his associates did not constitute a series of abandoned experiments, his evidence of record

failed to properly identify his compounds as having the structure of the counts, and also manifestly failed to meet the necessary requirement for satisfactory corroboration as to his reduction to practice.

The board in reaching the conclusion hereinbefore described found, among other things, that the testimony of the only witness for appellant who purported to have firsthand knowledge of appellant's work in preparing the compounds was Dr. Lontz, who was employed in the laboratory adjacent to appellant's and was therefore in a position to be familiar with his experiments.

The board quoted excerpts from the testimony of Dr. Lontz in which he testified that at the time he formally witnessesd appellant's Exhibits 6, 10, and 12 by attaching his signature thereto, he was "familiar" or "thoroughly familiar" with appellant's work therein described. That testimony, the board stated, does not necessarily mean that the familiarity described by Dr. Lontz was based on direct knowledge rather than on hearsay and accordingly held that the most that can be derived from the testimony of Dr. Lontz is that he "probably" had witnessed or seen some unspecified part of appellant's work.

In support of its position, the board quoted and italicized the following excerpt from the record relative to the testimony of Dr. Lontz:

"XQ.22. You testified that your signature indicated that you had examined the pages from Dr. Searle's notebook. By examination of the pages what do you mean? A. I mean that I have read the description of the experiment that Dr. Searle described on that page and that I *probably had witnessed or seen in part some of his experiment.*

"XQ.23. When you said you were familiar or thoroughly familiar with the work, what did you mean by that? A. I mean by that the nature of his synthesis was very closely related to a project on surface-active compounds which I have in my course of being employed at the Experimental Station been closely associated with."

The board also stated that while, for the purpose of sufficient corroboration,

a corroborating witness need not observe every act of an inventor's experiment, it is essential for such corroboration that the witness must have observed the performance of the essential features of the experiment, citing Lichtenwalter v. Caron, 158 F. 2d 1011, 34 C.C.P.A., Patents, 792. For the stated reason that Dr. Lontz could not positively say he saw appellant's experiments with any particularity, the board held there was no proper corroboration of appellant's testimony.

The board in its decision also overruled appellant's contention that the tests made by Kaberg met the requirements of an additional reduction to practice on behalf of appellant. The facts and the board's conclusion with respect to the point in issue were succinctly stated by the board in the following excerpt from the record: "The party Searle claims an additional actual reduction to practice based on work done on his behalf by Kaberg. Kaberg was engaged in making ceratin pesticidal evaluations relating to the compounds in issue, and this work carried over into the year 1942. It is alleged that because of the relatively small size of the samples sent by Searle and because of the advantages of forming the quaternary ammonium pentachlorophenates *in situ*, Kaberg made up the compounds himself. The evidence shows that Kaberg combined various ingredients which he regarded as producing the compounds responding to the issue and tested them for fungicidal effects. Nowhere in the record does it appear that the materials produced by Kaberg were ever tested to determine their chemical structures. There being no proof of identity of the compounds, it must be concluded that the evidence with respect to Kaberg's work fails to establish reduction to practice."

The board also pointed out in its decision that the material which constituted Searle's Sample A was subjected to comprehensive tests by Dr. MacDonald, another coemployee, skilled chemist, and expert analyst, in January of 1947, after the present interference was declared, and held that such tests demonstrated beyond question that the material was the octadecyl compound satisfying count 2.

The board stated, however, that adequate tests made in 1947 cannot take the place of inadequate tests made in 1941; that the later tests did not properly establish the identification of the compound prepared by appellant in 1941, or corroborate the structure of the compound then prepared by him; and that the later tests were without merit, for the further reason that the law does not recognize reduction to practice nunc pro tunc. In support of the holding last described, the board cited the decisions of this and other courts in the cases of Bainbridge v. Walton, 104 F.2d 808, 26 C.C.P.A., Patents, 1417; Electro-Metallurgical Company et al. v. Krupp Nirosta Co., Inc., 3 Cir., 122 F.2d 314; Derr v. Gleason, 49 App.D.C. 69, 258 F. 969; Smith v. Warnock, 50 App.D.C. 326, 271 F. 556.

Appellant in his request for reconsideration urged that the board's original decision was based upon an apparent misunderstanding of the issue in that the said decision did not take the two following points into account:

"(1) Having found that the Searle Sample A was undoubtedly the composition of the Count 2 The Board mistakenly applied decisions relating to an entirely different type of situation. It is urged that nunc pro tunc proof of the type here offered is adequate.

"(2) The fact that Kaberg failed to determine chemical structure by analysis is irrelevant and should not have been advanced as a defect in Kaberg's corroboration of Searle's invention."

In overruling the first of the two points upon which appellant had based his petition for reconsideration, the board pointed out that under the law as stated in decisions originally cited by the board, identification of the material upon which appellant relied for reduction to practice had to be established on a correct scientific basis; that the structure of the compounds could have been ascertained at any time after March 27, 1941, by an analysis thereof; that while appellant proved a material obtained from him had some utility and a certain chlorine content, the fact remained there was no proper or satisfactory identification of the

trial until the year 1947, when the material was analyzed by Dr. MacDonald; and that, as specifically stated in the case of Smith v. Warnock, supra, the law recognized no such thing as a reduction to practice nunc pro tunc.

In overruling the second of the two points upon which appellant had based his petition for reconsideration, the board held that since Kaberg made no test to determine he produced the compounds of the counts, his assertions to that effect had no scientific basis and were merely speculative.

█ Appellant urges here that the decision in the case of Lichtenwalter v. Caron, supra, upon which the board relied, is irrelevant to the facts in the present case because the Lichtenwalter case concerns a process, where the steps are important, whereas the instant case concerns a chemical compound. The rule is well settled, however, that where the identity of the structure of a chemical compound is the point in issue, and where that compound has not been properly analyzed, the method by which the product was prepared is a proper factor to be considered. Farrington et al. v. Mikeska, supra.

█ Appellant contends he identified the structure of the compounds of the counts by the method of synthesis in which the compound was built up by one or more reactions. Accordingly, his testimony might have been adequately corroborated, had there been present some one who subsequently supplied the proper evidence as to appellant's performance of the essential features of his invention. See Senkus v. Johnston, 166 F.2d 597, 35 C.C.P.A., Patents, 1008. See also Thurston v. Wulff et al., 164 F.2d 612, 35 C.C.P.A., Patents, 794.

█ A careful review of the facts of record, together with the authorities cited, disclose that there is no manifest error in the decision of the board. In view of that conclusion, it is deemed unnecessary to discuss other points advanced by counsel for the respective parties.

█ Subsequent to the filing of the record in this court, appellant filed a motion that appellees be required to pay the costs

of printing in the record, the testimony and certain exhibits of appellees, not included in appellant's praecipe before the Patent Office, for the alleged reason that such testimony and exhibits are irrelevant to the issues in this case.

The court in a per curiam opinion denied the motion of appellant and required each party to deposit the cost of printing appellees' testimony and exhibits, such cost to be taxed against the proper party when the case is decided on the merits. Searle v. Glarum et al., 167 F.2d 640, 35 C.C.P.A., Patents, 1106. We are of opinion that the additional matter referred to was necessary to a proper decision of the issues in this case. Under the facts thus presented, the costs of printing the additional matter requested by appellees will be taxed against appellant.

For the reasons stated, appellees are entitled to the award of priority in this case and the decision of the Board of Interference Examiners is accordingly affirmed.

Affirmed.

By reason of illness, HATFIELD, Judge, was not present at the argument of this case and did not participate in the decision.