FOOD FAIR OF VIRGINIA, INCORPORATED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 21957. Promulgated June 6, 1950.

*E. T. Simpson, Esq.*, for the petitioner.
*Sanford M. Stoddard, Esq.*, for the respondent.

**OPINION.**

TURNER, *Judge*: The parties are agreed that expenditures made for defending or perfecting title to property are capital expenditures and are not allowable deductions in computing taxable net income. However, they are in disagreement as to the purpose for which the expenditure in controversy was incurred. The petitioner contends that it was incurred primarily for the purpose of protecting and maintaining its income by bringing about a discontinuance by Big Bear of certain advertising practices which had resulted in loss of income to the petitioner and that that was the sole result accomplished. Petitioner insists that the expenditure was not in anywise incurred for the purpose of defending or perfecting title to any of its property. The respondent's position is that the expenditure was incurred for the purpose of defending or perfecting petitioner's right and title to the trade name "Food Fair."

It is clear that the petitioner's suit against Big Bear resulted from the latter's use of the trade name "Food Fair," which the petitioner had been using in its business since its inception. In its complaint the petitioner alleged, among other things, that it had established that trade name and the exclusive right to its use in the State of Virginia. While not claiming ownership of such trade name in, or for, itself, Big Bear denied in its answer that the name belonged exclusively in the State of Virginia to the petitioner. Manifestly, any adjudication of the suit would require a determination as to whether the petitioner had established such trade name and was entitled to its use in the State of Virginia, as petitioner claimed. Such a determination would be a prerequisite to a determination as to the action, if any, that should be taken on the petitioner's prayers for relief, including the prayer for relief from the advertising practices of Big Bear which had resulted in the loss of income to the petitioner. Obviously, if the petitioner had no title to or right in the controverted name, it had nothing on which to base a complaint about Big Bear's use of it. Without permitting these questions to be determined judicially, the petitioner and Big Bear effected a compromise settlement. The record is silent as to whether the agreement under which the compromise was effected was reduced to writing. However, such evidence as there is as to the terms of the agreement shows that Big Bear agreed to, and did, desist from any further use of the name "Food Fair" in the conduct of the business of its Alexandria store, including the advertising with respect thereto. The evidence also indicates that Big Bear has desisted from any acts which would indicate that its Alexandria store was owned or operated by petitioner or in anyway connected with it. Under the settlement Big Bear was permitted to continue trading under the name of "Food Lane," a name which, so far as shown, the petitioner had never owned or used. Big Bear was also permitted to continue selling merchandise bearing the manufacturer's or processor's trademark or label "Food Fair," but not to advertise such merchandise.

From the foregoing, we think it is obvious that basically and primarily the suit was one to defend or perfect the petitioner's title to, or property right in, the trade name "Food Fair." That the suit was disposed of by a settlement agreement between the parties in no way detracts from the fact that the primary purpose of the litigation was to obtain a judicial determination as to ownership and that the attorney's fee was incurred in defense of the ownership of and property rights in the name. Since in substance the attorney's fee was a cost of defending or perfecting title to property, it was not an allowable deduction. *Morgan Jones Estate*, 43 B. T. A. 691; affd., 127 Fed. (2d) 231; *Central Material & Supply Co.*, 44 B. T. A. 282; affd. on this point,

126 Fed. (2d) 542; *Louisiana Land & Exploration Co.*, 7 T. C. 507; affd., 161 Fed. (2d) 842.

The petitioner cites and relies on *Perkins Bros. Co.* v. *Commisioner*, 78 Fed. (2d) 152, and *Lomas & Nettleton Co.* v. *United States*, 79 Fed. Supp. 886. The primary question involved in the *Perkins Bros. Co.* case was whether payments made by the taxpayer for obtaining orders for new subscriptions and the renewal of old subscriptions were for the purpose of building up the circulation structure of the taxpayer's newspaper or were for the purpose of maintaining its structure after it had been built up. *Lomas & Nettleton Co.* case involved the deductibility of expenditures incurred by the taxpayer in connection with the defense and settlement of actions brought and claims made against it, the substance of which was to the general effect that by means of domination by petitioner and its directors and officers of another corporation they had made profits at the expense of the other corporation for which they ought to account. The decisions in these cases which were favorable to the taxpayers afford no support to the petitioner's position here.

*Decision will be entered for the respondent.*