51 CCPA

**James L. GIANLADIS, Appellant,**

v.

**Gus S. KASS, Appellee.**

**Patent Appeal No. 7019.**

United States Court of Customs
and Patent Appeals.

Nov. 14, 1963.

Kingsland, Rogers, Ezell & Robbins, Estill E. Ezell, Glenn K. Robbins and Edmund C. Rogers, St. Louis, Mo., for appellant.

Mason, Kolehmainen, Rathburn & Wyss, Warren D. McPhee, Chicago, Ill., for appellee.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and ALMOND, Associate Judges.

RICH, Judge.

This appeal is from the decision of the Board of Patent Interferences of the United States Patent Office awarding priority of the subject matter of the single count of interference No. 89,307 to the senior party Gus S. Kass.

Kass is involved in the interference on his application Serial No. 454,222, filed September 3, 1954, entitled "Silicone Composition." James L. Gianladis, the junior party, is involved in the interference on his application Serial No. 714,712, filed February 12, 1958, entitled "Silicone Emulsified Lotion and Method for its Preparation." [1]

The single count adequately describes the invention and reads as follows:

"1. A cosmetic composition consisting essentially of isopropyl myristate and an organopolysiloxane, forming a single phase."

The problem solved by the invention was finding a suitable solvent for organopoly-

---

1. The involved Gianladis application was substituted for Serial No. 454,625, filed September 7, 1954, which was originally involved in the interference. The later-filed application is a continuation-in-part of the former.

siloxanes.[2] The composition may be used as a cosmetic as is or may be mixed with compatible oils or emulsified in water to form lotions and creams.[3]

To facilitate understanding the issues, we shall first outline the chronology of events leading up to this interference. Gianladis, the junior party, testified that he tried various formulations in the period January through March of 1954 during which time he made the composition of the count. He introduced uncorroborated notebook records dated as early as January 3, 1954, showing specific formulations within the count. Gianladis also testified that he gave samples containing the composition of the count to personal friends Morris and Moore for testing some time between January and March, 1954, but did not disclose the formulation to them. He also sent letters to various cosmetic houses in an unsuccessful attempt to interest them in his composition. In none of the letters did he disclose the contents of the composition, referring to it simply as "silicone emulsion." Morris and Moore both testified that they received samples from Gianladis as alleged and that they cosmetically tested the samples, finding them to be satisfactory. Neither Morris nor Moore knew the contents of the samples tested.

In July 1954, Gianladis met Packwood, a manufacturer who was interested in purchasing the composition. Samples were given to Packwood on July 9, 10 or 11, 1954, which samples were tested cosmetically before July 22, 1954, and found to be satisfactory. Packwood retained a portion of one sample. At the time Packwood so tested the samples he did not know their formulation.

On July 22, 1954, Gianladis disclosed the formulation of the samples to Packwood as part of contract negotiations in which the rights to the formulation were sold to Packwood. This was the first time Gianladis disclosed the formulation to anyone. In 1961 Packwood had the retained portion of one sample analyzed. This was long after the declaration of the interference on April 23, 1958. The analysis confirmed that the sample was in fact what Gianladis stated it was,[4] a

2. The terms "organopolysiloxanes" and "silicone" refer to a class of polymers with the recurring unit $-[SiR_2 - O]-$ wherein R is ordinarily a monovalent organic radical connected directly to the Si atoms by a C atom. We shall hereinafter refer to such compounds as "silicones."

3. Both applications state that prior to the instant invention, those skilled in the art recognized the usefulness of silicones as skin protectants. However, no cosmetically compatible solvent for silicones was known nor are silicones emulsifiable in water or conventional cosmetic bases. Both parties found that isopropyl myristate, and ester of isopropyl alcohol and myristic acid, not only dissolved silicones but also rendered the silicones emulsifiable in water and dispersible in conventional cosmetic bases.

Gianladis, according to his application, prepared water emulsions of the silicone-isopropyl myristate solution. He first dissolved silicone in isopropyl myristate then treated the solution with so-called "water-phase" components. The resultant compositions are emulsions of silicone-isopropyl myristate solution in admixtures of water and other cosmetic base materials.

Kass prepared not only water emulsions of silicone-isopropyl myristate solutions but also admixtures of the solutions with plain cosmetic oils. For example, one Kass composition consists of the silicone-isopropyl myristate solution admixed with mineral oil, another with lanolin, still another with petrolatum. Kass also prepared cosmetic which was simply silicone dissolved in isopropyl myristate.

The count of this interference defines only a solution of silicone in isopropyl myristate. Such solution is useful as a cosmetic per se and in combination with water or other cosmetic materials.

4. Based on activities preceding July 8, 1954, the board held that Gianladis failed to corroborate conception stating "in no case did he reveal the formula of his preparation, and in particular the use therein of isopropyl myristate, to any of these persons or companies. The evidence of these activities * * * has thus no probative value to establish either conception or reduction to practice."

In his brief before this court, appellant argues that the board erred in not

**324**

composition which at least *contains* the composition of the count.

Based on the disclosure and contract negotiations of Gianladis on July 22, 1954, Packwood commenced commercial production of the composition and was still producing it in 1961. A patent application was prepared and filed September 7, 1954, Serial No. 454,625, the parent of the application now involved.

Turning to the activity of Kass, he alleges experimentation in June 1954 culminating in a disclosure of the invention to his patent attorney on July 8, 1954. The testimony of the attorney shows that he recommended a novelty search; that such search was made and reported to Kass on July 30, 1954; that on August 17, 1954, Kass instructed his attorney to prepare a patent application; and that such application was prepared and filed on September 3, 1954.

The board held that Kass corroborated conception on July 8, 1954, and constructively reduced to practice September 3, 1954; that Gianladis did not prove conception until July 22, 1954 when he disclosed his formulation to Packwood; and that Gianladis never corroborated actual reduction to practice since Packwood did not know the formulation at the time he cosmetically tested the samples earlier in July, 1954. Since the board held Kass was first to conceive and first to reduce to practice, it awarded him priority. The board found it unnecessary to consider diligence on the part of Kass.[5]

For reasons hereinafter set out, we believe the board erred in not finding both conception *and* reduction to practice for Gianladis on July 22, 1954. Accordingly, it becomes necessary for us, in reviewing the award of priority, to consider diligence on the part of Kass.[6] We hereinafter consider the diligence issue and find that Kass was diligent from a time prior to conception by Gianladis to the filing of the Kass application. Thus, the award of priority to Kass must stand though it rests on grounds different from those underlying the board's decision.

Appellant, Gianladis, alleges that the board erred in: (1) denying Gianladis a corroborated reduction to practice on July 22, 1954; (2) awarding Kass a conception date of July 8, 1954; and (3) not finding lack of diligence on the part of Kass, assuming Gianladis actually reduced to practice on July 22, 1954. We

holding that the activities preceding July 8, 1954, when considered in conjunction with the giving of a sample to Packwood on July 9, 10 or 11, 1954, show that Gianladis conceived prior to July 8, 1954. Appellant also points to the testimony of Morris, a chemist, that to date (December 29, 1960, the date of Morris' deposition) no other solvent for silicones was known, the implication being that Gianladis necessarily prepared the solution of the count since he undoubtedly had a "silicone solution." Further, appellant argues that Packwood possessed the sample, later proved to be the composition of the count, on July 9, 10 or 11, 1954, and that such sample was not produced "overnight," lending weight to the argument that conception occurred prior to July 8, 1954.

Although we see logic in the appellant's position, the fact remains that the record does not satisfactorily establish that the composition tested by Moore and Morris and alluded to in appellant's letters of solicitation to cosmetic houses was the same as the composition given to Packwood.

Moore's testimony concerning the lack of other solvents for silicones is limited to the deponent's "personal knowledge" and we cannot accept it as scientific fact, particularly in view of the disclosure by Kass (Example 10) that isopropyl *laurate* will also dissolve silicones. The notebook records dated January 3, 1954, are uncorroborated and are of little probative value even when considered with the other activities preceding July 1954.

5. The board stated, "Since neither party has proved an actual reduction to practice before the filing date, Kass, as the first to conceive and the first to constructively reduce to practice, must prevail in this interference and *it is unnecessary to consider diligence on his part.*" [Emphasis ours.]

6. 35 U.S.C. § 102(g) states, inter alia, "In determining *priority* of invention there shall be considered * * * the reasonable *diligence* of one who was first to conceive and last to reduce to practice, from a time prior to conception by the other." [Emphasis ours.]

shall consider these three points seriatim. As to point (1), the board said:

"We note that the tests of the cream and lotion made by Packwood were made before the formulas were revealed to him so that he was not at this time aware of the specific composition of the material being tested. The record does not show that any subsequent tests were made. Although in view of the broad statement of the utility of the composition in the count the tests might have been adequate to establish reduction to practice if made by a witness with knowledge of the composition, reduction to practice cannot be established by a witness who does not have personal knowledge of the nature of the product tested. Fausek et al. v. Vincent, 25 CCPA 770, 92 F.2d 909, 1938 C.D. 184, 35 USPQ 520; Collins v. Olsen, 26 CCPA 1017, 1939 C.D. 405, 102 F.2d 828, 41 USPQ 220; Keefe v. Watson, 31 CCPA 1080, 142 F.2d 283, 565 O.G. 523, 61 USPQ 441, 445.

"The disclosure made by Gianladis after the contract was signed was sufficiently corroborated in the testimony of Packwood to accord Gianladis conception as of its date July 22, 1954 but as to reduction to practice cannot make up for the lack of knowledge of Packwood during the tests. The information in such disclosure, although it was bought and paid for, still stems from the inventor. The knowledge of a corroborating witness must be independent of the inventor. Thurston v. Wulff et al., 35 CCPA 794, 164 F.2d 612, 607 O.G. 578, 76 USPQ 121; Kear v. Roder, 28 CCPA 774, 115 F.2d 810, 1941 C.D. 158, 47 USPQ 458. Such corroboration must cover every essential element of the count. Obviously it must cover the isopropyl myristate in this case. Lichtenwalter v. Caron, 34 CCPA 792, 158 F.2d 1011, 598 O.G. 325, 72 USPQ 271.

"The situation is not remedied by the analyses made of the contents of Gianladis Exhibit 1 in 1961 by Gaebler. Although it is stipulated that the results appeared to indicate a silicone and isopropyl myristate to be present, reduction to practice cannot be established *nunc pro tunc*. Jira v. Weber et al., 40 CCPA 762, 201 F.2d 914, 670 O.G. 5, 96 USPQ 372; Searle v. Glarum et al., 37 CCPA 896, 179 F.2d 974, 1950 C.D. 206, 84 USPQ 454."

As we understand the board's position, corroboration of the Gianladis reduction to practice would require that Packwood have tested the composition cosmetically and know of his *own independent* knowledge the chemical constituents thereof. We do not agree.

■ This court stated in Phillips and Starcher v. Carlson, 278 F.2d 732, 47 CCPA 1007:

"While each and every element of a reduction to practice must be corroborated, there is no fixed single formula in proving corroboration. It may be established by documentary evidence and the activities of others * * *."

The goal of corroboration here is simply to establish that the inventor actually produced the product and knew it would work, by proof that could not have been fabricated or falsified. All the evidence must be considered in determining whether or not the appellant has met such requirement. We believe he has. On July 22, 1954, Packwood had *the* composition of the count, knowledge that it worked (because he had tried it), and knowledge of its formulation (albeit derived from Gianladis). Packwood commenced producing the composition in 1955 and was still producing it in 1961. Nothing in the record indicates that Packwood even had a doubt that the commercially formulated material corresponded to that which he successfully tested in July, 1954. We are satisfied that it did and that Packwood proceeded with his business on the basis that it did, a powerful corroborating circumstance.

The board relies on this court's decision in Thurston v. Wulff et al., 35 CCPA 794, 164 F.2d 612, in requiring that Packwood's knowledge of the formulation be *independently* derived. In Thurston, however, the "independent knowledge" issue related to the *identity* of a sample and the *chemical structure* of a new compound. The corroborator in the spring of 1939 observed the admixing of reactants by the inventor and observed a crystalline product. In the summer of 1939 the corroborator saw another crystalline product which the *inventor said* was the same material. This court held that knowledge of the *identity* of the samples was derived from the inventor and was not corroborative. But in that case neither the *inventor* nor the corroborator knew *what the material was*. The instant case is clearly distinguishable. Gianladis *knew* he had a composition of silicone and isopropyl myristate. No questionable chemical structure is involved, a mixture only. Packwood produced such compositions commercially, never doubting the veracity of Gianladis' disclosed formulation. The commercial compositions behaved just as the earlier tested samples. In Phillips and Starcher, cited supra, the board took a position similar to the instant one. The inventor labelled a bottle with the chemical name of the compound of his invention. He sent the compound in the labelled bottle for tests as a resin-producing component. The tester-corroborator completed the tests successfully and stated that he knew what the chemical was only through the description on the bottle, which knowledge was derived through the inventor. The board held the corroboration to be insufficient since the tester had "no personal knowledge" of the nature of the compound. This court rejected such argument stating at page 736 of 278 F.2d, at page 1012 of 47 CCPA:

> "If the compound which [the corroborator] actually tested was that of the count, it is obvious that the requirement of corroboration to establish a reduction to practice has been fulfilled.
>
> "So the next question to be resolved is whether the tested compound was [the compound in question] * * *."

The same rationale applies in this case. The fact that the tests by Packwood came before he knew the formulation is immaterial. The composition tested was in fact that defined by the count and the evidence corroborates the testimony of the inventor that he had it on July 22, 1954. We hold, therefore, that Gianladis reduced to practice on that date.[8]

We turn now to point (2), the allegation of error in awarding Kass a conception date of July 8, 1954. Appellant argues that the disclosure by Kass to his attorney does not corroborate conception since the disclosure indicates a mere "possibility" that isopropyl myristate will dissolve silicones, and that no tests were disclosed confirming such allegations. Further appellant argues that the idea was still in the "state of experi-

---

8. The board relied on Searle v. Glarum et al., cited supra, in holding that the 1961 analysis is not probative since reduction to practice cannot be established *nunc pro tunc*. The 1961 analysis showed that the sample tested by Packwood in July, 1954, in fact contained the composition of the count. We think Searle is inappositely cited. The inventor in Searle, unlike Gianladis in the instant case, did *not* know that he had made the chemical compound of the count at the time he reacted his starting materials. He knew only what he had reacted and the results of an incomplete analysis of the product. The board specifically held that this was insufficient to *identify* the compound. Six years later after chemical structural analysis the compound of the count was found in fact to exist. It was thus properly held that the *identification* of the compound, being a necessary element of reduction to practice, was established only *nunc pro tunc*.

In the instant case, Gianladis knew ab initio of what his admixture consisted since no chemical reaction was involved. Thus, no *nunc pro tunc* situation exists since it is not necessary to look to the analysis of 1961 to establish identification of the composition made in July, 1954.

mentation" when disclosed to the attorney.

The board stated (all emphasis ours):

"The evidence of Kass for proof of conception is embodied in his oral disclosure on July 8, 1954 to his attorney Richard M. S. Manahan. * * * Kass made this disclosure to enable Manahan to make a search in the Patent Office to determine whether or not a patent application should be filed on a discovery which he had made and thought might be inventive."

Manahan took notes as to the Kass disclosure which are embodied in Kass Exhibit J. * * *

According to Manahan's testimony: (* * * "he" refers to Kass)

"I can't remember his exact words, but I can remember that he told me that these silicone oils were difficultly soluble but they had uses in the cosmetic field. And, that he had found that they were completely miscible with certain esters. By completely miscible—I guess it doesn't need any explanation. I understood it as a chemist. *They were completely miscible with isopropyl myristate,* but not with isopropyl palmitate, butyl stearate, or propylene gylcol laurate. All of these materials were discussed at the time of the conference, and I made the notes indicated on Exhibit J."

In the next paragraph in Manahan's deposition, the mixtures of *silicone oils with isopropyl myristate are referred to as "solutions".*

"Kass further disclosed to him that the solutions were compatible with mineral oil, petrolatum and lanolin. He also stated that crude formulation of isopropyl myristate containing up to 30% of closely related fatty acid esters might be employed. He gave examples of four commercially available silicones which might be employed making reference to literature published by Dow Chemical Company and General Electric Company. A *specific composition* mentioned contained *isopropyl myristate,* 8% mineral oil and 4% Viscasil, identified as an *organo-polysiloxane* marketed by General Electric Company.

"We believe this disclosure to be sufficient to indicate conception by Kass as of its date, July 8, 1954. The substance of the count * * * is clearly met by the mixture or solution disclosed by Kass. It is clear from the quoted passage that a cosmetic use was contemplated. We see no merit in the contentions of Gianladis that Kass has not proved conception because his experimentation with compositions of this type was not complete at this date or because he had not tested the solution as a cosmetic. *These matters pertain to a reduction to practice, which Kass does not claim, not to conception."*

We agree with the board. Our review of Exhibit J, referred to in the above quotation, shows unequivocally that Kass conveyed a complete idea of the invention to his attorney on July 8, 1954. The attorney was a chemical engineer and testified that he understood the invention, having worked with silicones himself. The concept of complete miscibility of silicones in isopropyl myristate was conveyed. The term "solution" was conveyed. Even a specific formulation was mentioned. As this court stated in Townsend v. Smith, 36 F.2d 292, 17 CCPA 647:

"It is therefore the formation in the mind of the inventor of a definite and permanent idea of the complete and operative invention as it is thereafter to be applied in practice that constitutes an available conception within the meaning of the patent law. A priority of conception is established when the invention is made sufficiently plain to enable those skilled in the art to understand it."

Appellant's allegation of error point (3) is that Kass was not diligent

from a time prior to July 22, 1954 (Gianladis' conception date) to the Kass filing date as required by 35 U.S.C. § 102 (g). The board did not rule on diligence, though it was foreseeable that it might require consideration on appeal. The parties have fully briefed and argued the issue before us and neither party questions our authority to pass on it. Moreover, we have held that such matters may properly be considered by this court when necessary to a priority decision, even though not specifically passed upon below. St. Pierre v. Harvey, 233 F.2d 337, 43 CCPA 918.

Appellant argues that Kass was not diligent since he "did nothing" from July 8 when he disclosed the invention to his attorney until August 17, 1954, when he instructed the attorney to prepare the patent application. The record shows that after the July 8 disclosure Manahan, the attorney, made a search in the Patent Office the following week, dictated a report of his search before July 29, and mailed a copy of the report to Kass on July 29, 1954. The report consisted of twelve pages plus fourteen patent copies. On July 30 Kass sent a memorandum to his superior recommending that a patent application be filed. On August 17 Kass sent a detailed experiment report to Manahan with instructions to prepare a patent application. The application was completed by the end of August and filed on September 3, 1954.

On the above facts, we disagree with appellant's position that Kass was not diligent. Both Kass and his attorney from inception engaged in activity directed to an expeditious preparation and filing of the application. Following the disclosure on July 8 the search and report were completed in three weeks. The fact that Kass "did nothing" during the interval July 8—August 17 is immaterial since the attorney's activity inures to Kass' benefit. Rines v. Morgan, 250 F.2d 365, 45 CCPA 743. The interval July 30—August 17 was not unreasonably long for Kass to study the 12-page report and fourteen patent copies, write a memorandum to his superior and furnish his attorney with a detailed report as basis for the patent application. The attorney prepared and filed the application in less than 3 weeks. In all, less than 2 months elapsed from the date of disclosure to the date of filing. Kass was manifestly diligent.

We hold, therefore, that Kass, being first to conceive and last to reduce to practice and diligent from a time prior to the earliest date to which appellant is entitled, is thus entitled to the award of priority. The decision of the board is affirmed.

Affirmed.