43 C.C.P.A.(Patents)

Robert A. REINERS, Appellant,

v.

Charles L. MEHLTRETTER,
Appellee.

Patent Appeal No. 6168.

United States Court of Customs
and Patent Appeals.

June 20, 1956.

Rehearing Denied Sept. 27, 1956.

John A. Dienner, Chicago, Ill. (Mildred Oncken, Chicago, Ill., of counsel), for appellant.

T. A. Seegrist, Washington, D. C., for appellee.

Before JOHNSON, Acting Chief Judge, and WORLEY, COLE, and JACKSON, retired, Associate Judges.

COLE, Judge.

This is an appeal from a decision of the Board of Patent Interferences of the

United States Patent Office awarding priority of invention of the subject matter in issue in interference No. 85,181 to the senior party Charles L. Mehltretter, the appellee in the present proceeding. The invention in controversy is defined in a single count which is as follows:

"A method for the preparation of 1, 2–isopropylidene glucuronic acid comprising oxidizing an aqueous solution of 1, 2,–isopropylidene glucose by means of an oxygen containing gas in the presence of a catalyst selected from the group consisting of platinum and palladium, the pH of said aqueous solution being maintained within the range of 4 and above throughout the reaction."

The invention relates to the preparation of 1, 2–isopropylidene glucuronic acid, also known as 1, 2–acetone–D–glucuronic acid, from 1, 2–isopropylidene glucose, also known as 1, 2–acetone–D–glucose. As indicated in the interfering applications, 1, 2–isopropylidene glucuronic acid is a valuable intermediate for the preparation of glucuronic acid, which latter acid has important biological uses. The interference count, however, does not require the actual production of the glucuronic acid.

As recited in the count the method here involved is a simple one, consisting in subjecting an aqueous solution of 1, 2–isopropylidene glucose to the action of an oxidizing gas, in the presence of a catalyst which may be platinum or palladium, and maintaining the pH value of the solution at 4 or above, throughout the reaction. As a result of that process the 1, 2–isopropylidene glucose is oxidized and 1, 2–isopropylidene glucuronic acid is produced.

The senior party Mehltretter filed his application here involved on April 26, 1949 and in his preliminary statement he alleged disclosure of the invention in issue to others and reduction to practice on April 28, 1948.

The application of the junior party Reiners was filed on August 19, 1949, and in his preliminary statement he alleged

disclosure of the invention to others and the making of a written description of it on December 8, 1947, and reduction to practice about April 29, 1948.

The Board of Patent Interferences found that Reiners had failed to establish a reduction to practice of the invention in issue prior to his filing date, August 19, 1949, that he could be accorded no date of conception prior to April 29, 1948 and that he had not shown reasonable diligence in reducing the invention to practice commencing just prior to Mehltretter's date of April 26, 1949. The board accordingly found it unnecessary to consider whether Mehltretter had established any date of invention prior to his filing date, and awarded priority to him without discussing his evidence.

The principal question in controversy here is whether certain work done by Reiners on April 29, 1948 amounted to a reduction to practice of the invention in issue. The Board of Patent Interferences found that, on that date, Reiners and his associates carried out a procedure which involved subjecting an aqueous solution of 1, 2–isopropylidene glucose to oxygen which was bubbled through the solution in the presence of a platinum catalyst, while maintaining the pH of the solution between 6 and 8, and that such procedure "conforms to the count." Those findings are amply supported by the record. However, the count calls for a method of preparing a particular substance, namely 1, 2–isopropylidene glucuronic acid and the mere performance of the steps recited in the count is not sufficient to establish a reduction to practice unless it is shown that the specified substance was produced. Hall v. Shimadzu, 59 F.2d 225, 19 C.C.P. A., Patents, 1288. Reiners' right to a reduction to practice as of April 29, 1948, therefore, depends upon whether or not he has shown that the process carried out on that date resulted in the production of 1, 2–isopropylidene glucuronic acid.

The basic evidence as to the work done by Reiners on April 29, 1948 consists in two pages of a record book containing a

report of the work and offered as Reiners' exhibit 9. That exhibit is identified by Reiners as well as by Hull and Sniegowski, who assisted him in the work and who signed and witnessed the exhibit on April 29, 1948. Exhibit 9 shows that during the experiment in which oxygen was supplied to an aqueous solution of 1, 2–isopropylidene glucose, the pH of the solution dropped steadily from 8+ to 6+. It is clear from the testimony of both parties that such a drop shows that an acid was being formed, but does not, in itself, indicate what particular acid it was.

Reiners' exhibit 9 also contains entries entitled "% Conv." which, according to Hull, show the percentage of glucuronic acid present in the solution, at various times, based on the starting material, 1, 2–isopropylidene glucose. Those percentages indicate more than fifty percent conversion.

The Board of Patent Interferences found that the percentages in question do not show what particular uronic acids were present and hence do not show the presence of the 1, 2–isopropylidene glucuronic acid specified by the counts; and that Reiners had not established that he had isolated glucuronic acid nor had he shown that the product of his exhibit 9 experiment had utility. For those reasons the board refused to accord Reiners a reduction to practice as of April 29, 1948. It is contended here by Reiners that his record sufficiently establishes the presence of satisfactory amounts of 1, 2–isopropylidene glucuronic acid in the solution resulting from his exhibit 9 experiment, and that it was not necessary to isolate that acid in order to reduce to practice the invention here in issue.

The procedure followed in determining the amount of 1, 2–isopropylidene glucuronic acid present in a solution is described by Reiners' witness Colburn who made the determinations on which the entries in Reiners' exhibit 9 are based. Colburn's testimony, which was partly stipulated, is not disputed as to factual accuracy nor as to the quantitative determinations made. The procedure followed by Colburn, which is described as a modified Tollens test, was carried out under hydrolytic conditions which would concededly have converted any 1, 2–isopropylidene glucuronic acid into glucuronic acid and accordingly this test, in itself, was not sufficient to show what particular kind of uronic acid was present in the starting solution. It is, moreover, alleged in the brief of the party Mehltretter that the results obtained by Colburn could also be produced by the presence of the sodium salt of a glucuronic acid, rather than the acid itself, in the solution, and it is pointed out in the brief that such sodium salt might have been formed in the solution resulting from the exhibit 9 experiment, since that solution contained sodium bicarbonate as a starting material. However, it is to be noted that the presence of such a salt would establish that a glucuronic acid had been formed, since such an acid must be first produced in the solution before the corresponding carbonate can be formed.

In view of the foregoing, it is clear that the April 29, 1948 experiment by Reiners did not result in the production of any 1, 2–isopropylidene glucuronic acid in purified or isolated condition and that no single test was performed which conclusively showed the presence of that material in the solution at any time.

However, as above noted, Reiners' exhibit 9 shows a steady drop in the pH of a starting solution consisting of an aqueous solution of 1, 2–isopropylidene glucose, with added sodium bicarbonate and a platinum catalyst, during the period when oxygen gas was being added. The testimony of record establishes that such a drop indicates the continuous production of an acid. As is pointed out in appellant's brief, such an acid could have been formed under those conditions only by the reaction of the oxygen with the 1, 2–isopropylidene glucose, and it would seem to be quite clear that the acid formed under these conditions must have been a glucuronic acid. Moreover, since the record indicates that a hydrolysis step is necessary to break down the iso-

propylidene group of the compounds here under consideration, and since no such step was included in the Reiners' experiment, it would be highly probable, if not certain, on the basis of the change in pH alone that 1, 2–isopropylidene glucuronic acid was formed in that experiment in the quantities indicated in Reiners' exhibit 9.

The modified Tollens test carried out by Colburn served to confirm the foregoing conclusion by establishing the presence in the solution of substances showing substantial conversion of the 1, 2–isopropylidene glucose to a glucuronic acid or, at least, to a salt of such an acid. Such a salt could only have been produced after a glucuronic acid had been formed in the solution. It is true that that test did not, in itself, show that the particular acid formed in the solution was 1, 2–isopropylidene glucuronic acid, but in view of the nature of the starting material, no other conclusion seems reasonable.

■ The experiment here under consideration was not of a pioneer nature. Both the starting products and the end products were well known compounds and the steps carried out were of a type which had been previously performed on generally similar materials. The reactions to be obtained could, therefore, be predicted with a reasonable assurance of accuracy and under such circumstances it is not necessary that the proof of identity of the products be as exhaustive as if entirely new substances or procedures were involved. Guinot v. Hull, 204 F.2d 281, 40 C.C.P.A., Patents, 982.

■ As was pointed out in the case last cited, the exact degree and character of proof necessary to establish the identity of the product of a chemical process must depend, to a large extent upon the particular circumstances of the case involved. Similarly, in Searle v. Glarum, 179 F.2d 974, 978, 37 C.C.P.A., Patents, 896, it was said that "The rule is well settled, however, that where the identity of the structure of a chemical compound is the point in issue, and where that compound has not been properly analyzed, the method by which the product was prepared is a proper factor to be considered." After careful consideration of all the evidence in the present case we are of the opinion that it has been sufficiently established that very substantial quantities of 1, 2–isopropylidene glucuronic acid were produced in Reiners' experiment of April 29, 1948 and that the experiment, therefore, not only included all the steps called for by the interference count but produced the end product called for therein. Whether the acid remained permanently in that form or reacted, partly or entirely, with the sodium bicarbonate to form a salt is not material so far as the count is concerned. It may be noted however that the lowering of the pH of Reiners' solution during the oxidation suggests that considerable quantities of the unreacted acid were present. The interference count does not specify that any particular amount of acid be prepared.

It is not alleged that Reiners isolated pure or substantially pure 1, 2–isopropylidene glucuronic acid in April of 1948, but the interference count is not drawn to that acid and does not require its production in any specified degree of purity. It merely requires that certain steps be carried out with a resultant production of that acid, and is not concerned with what happens thereafter.

■■ Notwithstanding the scope of the count, however, we agree with the Board of Patent Interferences that Reiners cannot properly be accorded a reduction to practice as of April 29, 1948, unless the product of his experiment performed on that date had utility. The literal performance of a claimed method without producing anything useful cannot properly be regarded as a reduction to practice of an invention. Birmingham v. Randall, 171 F.2d 957, 36 C.C.P. A., Patents, 780.

■ But in order to establish utility of a product it is not necessary to show that it can immediately and without change perform a useful function. Prod-

ucts are useful if they serve as starting materials or intermediates in producing other materials or articles which are directly useful. An example of this is found in the present case where the only use alleged for 1, 2–isopropylidene glucuronic acid is as an intermediate for the preparation of the biologically useful glucuronic acid. Similarly the solution resulting from Reiners' experiment must be considered useful if it could be treated by generally recognized processes to produce the useful glucuronic acid.

It is noted that Reiners' exhibit 9 contains a statement, based on the experiment above discussed, that "Monoacetone glucose [isopropylidene glucose] is capable of being oxidized under these conditions in good yield of uronic acids." The witness Sniegowski testified that that entry refers to "the oxidation product of monoacetone glucose that was capable of being converted to the substance that we were looking for, glucuronic acid." From this evidence it is clear that the recovery of glucuronic acid from the solution which resulted from the experiment was regarded as a routine procedure since the entry quoted is unequivocal and there is no suggestion of further experiments. Reiners and his associates were experienced research chemists and their conclusions, set forth at a time when there was no motive for misrepresentation, are entitled to substantial weight.

The process of obtaining glucuronic acid from a solution containing 1, 2–isopropylidene glucuronic acid or its sodium salt involves the steps of purification and hydrolysis. It is clear from the record that the hydrolysis step was known at the time of Reiners' experiments as a conventional means for obtaining glucuronic acid from compounds of the kind just mentioned.

It further appears that methods of producing the necessary purification were known. Reiners describes one such process in his application and Mehltretter's application describes two others, only one of which he claims as new. Mehltretter's

brief, after describing the purification process disclosed in Reiners' application states, "The purification may also be accomplished by other procedures."

It is also significant that the interference count recites a process of producing 1, 2–isopropylidene glucuronic acid comprising no other step than those performed by Reiners on April 29, 1948. Obviously, therefore, those steps were regarded as setting forth the inventive concept involved and, since the steps recited would not produce the acid *per se*, but only a mixture or solution containing it, the steps by which the acid could be isolated from such a solution would appear to have been regarded as conventional.

Under all the circumstances of this case we are of the opinion that it has been satisfactorily shown that persons of ordinary skill in the art, as of April 29, 1948, would have had no difficulty in purifying the product obtained by Reiners on that date and obtaining useful quantities of glucuronic acid from it. The product, therefore, had utility.

Having established that on April 29, 1948 he successfully carried out a method which embodied all the steps set forth in the interference count, and which produced 1, 2–isopropylidene glucuronic acid in substantial quantities, and that the product resulting from that method had utility within the meaning of the patent laws, Reiners is entitled to April 29, 1948 as a date of reduction to practice. Since that date is prior to Mehltretter's filing date, Reiners must prevail unless Mehltretter's proofs establish some earlier date of invention.

As noted above, the Board of Patent Interferences made no findings as to Mehltretter's proofs. Under these circumstances we consider it proper to remand the case to the Patent Office for a consideration of Mehltretter's evidence. Pines v. McAllister, 188 F.2d 388, 38 C.C. P.A., Patents, 981.

The decision of the Board of Patent Interferences is *reversed* and the case is remanded to the Patent Office for fur-

ther proceedings in conformity with this opinion.

Reversed.

JACKSON, J., retired, recalled to participate.

O'CONNELL, J., because of illness, did not participate in the hearing or decision of this case.