Modified.

29 C.C.P.A. (Patents)

## SCHMUTZER v. AYERS.

### Patent Appeal No. 4589.

Court of Customs and Patent Appeals.
June 29, 1942.

Hoguet, Neary & Campbell, of New York City (Walter H. Free, of New York City, and Martin T. Fisher, of Washington, D. C., of counsel), for appellant.

Cushman, Darby & Cushman, of Washington, D. C. (John J. Darby, of Washington, D. C., of counsel), for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

GARRETT, Presiding Judge.

This appeal brings before us for review the decision of the Board of Interference Examiners of the United States Patent Office awarding priority to the party Ayers in an interference proceeding instituted between applications for patents relating to a method and apparatus for filling containers with carbonated beverages. The decision of the board described the invention in general terms as follows:

"Both parties discovered in packaging carbonated beverages, particularly beer, that when an air space was left between the top of the liquid and the sealing means of the container, the air therein caused oxidation of the beverage which resulted in the so-called 'bread taste.' To obviate this difficulty a method was devised whereby the container was filled and a heating means inserted into the beverage thereby liberating carbon dioxide in the form of fine bubbles which filled the air space of the container and forced out a portion of the air. The container was then sealed. The apparatus to perform this method consists of a filling machine, a heating device so mounted that it may be immersed in the upper portion of the container, and a sealing mechanism. All these mechanisms are so mounted and actuated that they operate in timed relation."

Nine counts were involved before the board and embraced in the appeal as taken to us. Motion was entered by appellant, however, to dismiss the appeal as to counts 7 and 8, which motion will be granted. Of the remaining seven counts we quote Nos. 2, 4, and 5 as illustrative:

"2. The combination in a filling machine, of a container filling mechanism, a sealing mechanism, a heating device mounted for immersion in the upper portion of a container to raise the temperature of the container sufficiently to liberate carbon dioxide and expel at least a part of the air from the space above the contents, and

means to actuate said mechanisms and device in timed relation."

"4. The combination in a filling machine, of a container filling mechanism, a container sealing mechanism, a fluid-heated element positioned between said mechanisms, and means to immerse said element in the container contents to raise the temperature of the contents sufficiently to liberate carbon dioxide and expel at least a part of the air from the space above the contents.

"5. The method of packaging beverages containing carbon dioxide, which comprises partially filling a container with the beverage, the unfilled space remaining in the container above the liquid level containing air, raising the temperature of only a relatively small proportion of the volume of the beverage in the container to cause it to release part of its carbon dioxide content and thereby purge at least part of the air from the said space above the liquid, and then sealing the container."

The application of Ayers was filed on October 25, 1938, and he relies upon that date for constructive reduction to practice, *not having introduced testimony*. The application of Schmutzer was filed June 10, 1939, and testimony was taken on his behalf in the effort to sustain the burden which rested upon him as the junior party of showing priority by a preponderance of the evidence.

It appears that counts 1 to 4, inclusive, originated in the Ayers application and the others in the Schmutzer application. Only counts 1 and 5 are method counts.

The board awarded Schmutzer conception (not reduction to practice) of counts 1 and 5 in October, 1937, and of counts 2, 3, 6, and 9 as of November 11, 1937, but held, "he has failed to couple this conception with reasonable diligence and therefore may not prevail as to these counts."

As to count 4 (as well as counts 7 and 8 not involved before us), the board held that Schmutzer had failed to establish either conception or reduction to practice prior to the filing date of Ayers' application.

The controversy has been simplified for us to some extent by a concession on the part of Ayers that Schmutzer was properly awarded priority of *conception* of counts 1, 2, 3, 5, 6, and 9. The concession, however, goes no further than the matter of conception.

On the part of Schmutzer it is contended that he not only conceived the subject matter of those counts, and count 4 as well, but that he reduced the invention to practice prior to the filing date of the Ayers application. In his preliminary statement he alleged reduction to practice "during late September or early October, 1937," and further alleged the beginning of "reasonable diligence" during October 1937.

While the concession of appellee eliminates any controversy respecting appellant's priority of conception of counts 1, 2, 3, 5, 6, and 9 it has been found necessary to consider the evidence covering that point because, particularly as to the method counts, appellant contends that the activities upon which the award of conception was based constituted reduction to practice also.

We first consider the method counts. The activities of Schmutzer upon which the award of conception of those counts was based are described in the decision of the board as follows:

"The record submitted on behalf of the party Schmutzer indicates that he had for many years been working on various means to cause the beer to foam into the air space prior to sealing thereby excluding the air from the container. He developed and used commercially a so-called tapping device for this purpose. In the fall of 1937 in investigating other methods for performing the same function he heated glass and steel rods and inserted them into bottles of beer and noted that by thus heating a portion of the liquid the beer was caused to foam up over the mouth of the bottle. His early work in this respect was done at the bottling line and no one witnessed his experiments to corroborate this work.

"In October, 1937 at a conference he disclosed his idea to various employees of the Hoffman Beverage Company amongst whom was the witness Manrodt who corroborates Schmutzer as to his disclosure of October, 1937. This disclosure apparently was merely concerned with the method of causing foaming of the beer by insertion of the heated rod in the bottle and hence constitutes a conception of the subject matter of the method counts 1 and 5 only.

"A few days after this disclosure, Schmutzer demonstrated his method to Manrodt. In this demonstration he took perhaps a dozen bottles of beer from the bottling line which allegedly had not been tapped to produce foaming by the then commercially used method. These bottles he unsealed and inserted heated steel rods perhaps an inch into the liquid. Manrodt testi-

fies that when this was done the beer foamed up forming a slight dome over the top of the bottle. With some of these bottles Schmutzer merely pressed his thumb over the foam to show how they might be sealed. About six bottles were sealed by a hand capper and Schmutzer testifies that he put some of these sealed bottles in his icebox for tasting later and some he used for making determinations relative to the amount of air in the bottles. Manrodt neither tasted any of the bottles when they were filled and sealed nor was he present at any of the air tests."

While the foregoing was held sufficient to establish conception, the board held it insufficient to establish reduction to practice because of the absence of corroboration of air tests and taste tests. Schmutzer testified that he made both those tests, but neither of them was made in the presence of Manrodt, the only person before whom any demonstration was carried out. The board stated its view respecting the necessity of such tests as follows:

"It appears from the record of this case that the idea back of the invention in issue was to eliminate air and thus eliminate the 'bread taste.' At the same time it appears from the record that if the rod was too hot the beer might be scorched and a 'yeast taste' develop. It would therefore appear that an adequate demonstration of the utility of the invention beyond the possibility or probability of failure would necessitate a tasting of the beverage as well as an air test to determine whether the beer could be sufficiently foamed to exclude enough air to eliminate the 'bread taste' and at the same time not be so hot as to scorch the beer and consequently cause it to develop a 'yeast taste.' In this respect the situation is closely analogous to that in the case of Collins v. Olsen [102 F.2d 828], 26 C.C.P.A. [Patents], 1017, 503 O.G. 3, wherein a taste test of an edible product was required to establish reduction to practice."

In contending that Schmutzer should be awarded reduction to practice of the method counts upon the basis of the demonstration described, it is asserted, in substance, in his brief filed before us (no oral argument having been offered), that he had had long experience in the art of packaging beverages, particularly beer, and had devoted much attention during many years to the matter of eliminating air from carbonated beverages to preclude excessive foaming and to prevent oxidation, and that he had developed a

method and device for removing air prior to filling the containers; also, it is contended that Manrodt was versed in the art from observation of the processes of manufacture, etc., and the position taken by counsel appears to be that because of their experience and expertness they were fully qualified to determine, without further activity than that shown in the demonstration, that the result obtained was satisfactory. It seems also to be urged that the demonstration in fact met the steps of the counts in a literal sense and that the law does not require more. Hence, while it is conceded that Schmutzer's work prior to the beginning of the experiments which eventuated in conception of the involved invention, "left unsolved the problem of removing the air which rushed into the bottle in the filling machine after the liquid had been filled therein," the position is taken, in effect, that, under the circumstances, Schmutzer's testimony is sufficiently corroborated by that of Manrodt to justify a finding of reduction to practice. It seems to be insisted that no "taste" test was necessary.

It is our view that the holding of the board upon this phase of the controversy is the correct one. We think Schmutzer's own testimony shows that both "air" tests and "taste" tests were necessary. As has been stated, he testified that he made them, but, unfortunately for him, he made them when alone, and so was unable to obtain the corroborative evidence which the law requires to establish the fact.

We turn now to the apparatus counts. Conception of those (except count 4) was awarded upon the basis of a drawing (together with the corroborative testimony) shown to have been prepared November 11, 1937, introduced in evidence as Exhibit 3, which, in the words of the board, "* * * illustrates an apparatus or machine for inserting a heated rod into a beer bottle in time relation."

With respect to count 4, it was pointed out by both the Examiner of Interferences and the board that it contains a limitation which requires that the element inserted into the beverage (to liberate carbon dioxide, etc.) to be a fluid-heated element, and that the drawing disclosed only a device in which such element (that is, the rod), was to be heated by an electrical current. Discussing this the board said:

"The party Schmutzer in his brief recognizes that this [fluid] element is not present in the drawing of exhibit 3 but

states that the electrical means is the full equivalent of a fluid heating means. However the doctrine of equivalence has no applicability in interference cases and hence this drawing together with the corroborative testimony of Manrodt and Martin fails to establish a conception of the invention of counts 4, 7 and 8. Dawson v. Martin [Cust. & Pat.App.], 111 F.2d 300, 519 O.G. 523."

 The doctrine of equivalency is not urged in the brief before us and, as stated, motion was made to dismiss the appeal as to claims 7 and 8. The holding that the doctrine of equivalence has no applicability in interference cases was clearly correct and the absence of any contention in appellant's brief leads us to suppose that such is conceded. Appellant's contention before us as to his right to count 4 seems to be predicated upon certain of his testimony, seemingly corroborated by Manrodt, to the effect that he heated some of the rods used in the demonstration given in Manrodt's presence with warm water.

It is our view that while the evidence in that regard might be taken as establishing conception of a fluid method of rod-heating (although this may be doubtful), it cannot be regarded as a reduction to practice of a combination device of which such rod is one element.

This would be true even if it were held that the other apparatus counts (limited in the drawing, Exhibit 3, to an electrical heating element) had been reduced to practice, but we are unable to agree that that was done.

It is not claimed that any device embodying the features of the drawing, Exhibit 3, was constructed or used by Schmutzer prior to the filing date of his application on June 10, 1939.

The position taken in the Schmutzer brief before us seems to be that he had developed a device having as an element a tapper feature associated with filling, sealing and container-conveying means and that it was proposed, or intended, to substitute the heated-rod feature for the tapper feature in the same association. Upon this basis it is argued that reduction to practice did not require the construction and use of the mechanism described in the drawing (Exhibit 3) upon which the award of conception was based.

Certain authorities alleged to support that position were cited. We have examined those authorities and find them so irrelevant to the situation here presented that we deem it unnecessary to review them.

Whatever Schmutzer may have intended to do with respect to inserting a heated-rod element in place of a tapping element into an existing combination device, it is not shown that he ever did it. In the only demonstration which is corroborated he inserted the heated rods into the bottles by hand.

It is clear to us upon the record that he cannot be awarded reduction to practice of the apparatus counts at any time prior to the filing date of his application.

It is equally clear that he has not proved any activity which demonstrated diligence within the critical period.

The appeal as to counts 7 and 8 is dismissed and the decision of the Board of Interference Examiners as to the other counts is affirmed.

Affirmed.