36 C.C.P.A.(Patents)

## BIRMINGHAM v. RANDALL.
### Patent Appeal No. 5512.

United States Court of Customs and Patent Appeals.

Dec. 7, 1948.

Rehearing Denied Jan. 28, 1949.

Firm of Charles W. Hills, of Chicago, Ill. (Benjamin H. Sherman and J. Arthur Gross, both of Chicago, Ill., of counsel), for appellant.

James M. Heilman, of Washington, D. C., for appellee.

Before GARRETT, Chief Judge, and HATFIELD, JACKSON, O'CONNELL, and JOHNSON, Judges.

HATFIELD, Judge.

This is an appeal in an interference proceeding from the decision of the Board of Interference Examiners of the United

States Patent Office awarding priority of invention of the single count in issue to Boardman M. Randall, appellee.

The interference involves an application of appellee, Randall, No. 468,010, filed December 5, 1942, and patent No. 2,343,740, issued to appellant, Donald G. Birmingham, on March 7, 1944, on an application filed September 18, 1940.

The count reads:

"The method of making fibrous web covered wood product which comprises superficially coating a broad face of a fibrous web with a resinous binder, pressing the coated face against a wooden surface to be united thereto and heating the pressed-together surfaces for uniting the members to mask any imperfections in the wood surface."

The invention in issue relates to a process of coating wood products with paper in order to conceal imperfections in the wood surface. In carrying out the process, the paper is first given a surface coating of a resinous binder and is then pressed against the board surface while heat is applied to the paper and board to cause the binder to unite the two.

■ Appellant did not submit any evidence and is, therefore, restricted for conception and constructive reduction to practice to September 18, 1940, the filing date of the application on which his patent here involved was issued.

Appellee, in his preliminary statement, alleged that he disclosed the invention to others, made a written description of it and reduced it to practice in March 1935. Appellee testified in his own behalf and also submitted the testimony of two witnesses, Alvin C. Whitaker and Henry M. Wigg.

The activity principally relied on by appellee is the making of some samples of paper covered board by the witness Whitaker, under instructions from appellee, on March 22 and March 25, 1935. The making of those samples is described on a page of Whitaker's notebook—appellee's Exhibit No. 15—and in Whitaker's testimony. The Board of Interference Examiners held that those samples were made by a process satisfying the requirements of the count of

the interference, and that the making of them established a reduction to practice by appellee in March 1935. Since this is long prior to the date to which appellant is restricted—September 18, 1940—the board awarded priority of invention to appellee.

Counsel for appellant challenge the board's holding of appellee's reduction to practice on two grounds, first, that it has not been established that the samples relied on by appellee were made by the process here in issue, and second, that it has not been established that the process by which the samples were made, whether or not it was the one here in issue, was reduced to practice, for the reason that there is no evidence that the samples were tested. The second contention will be considered first.

■ The invention in issue is a method of making a product. We have repeatedly held that such an invention is not reduced to practice until it is established that the product made by the process is satisfactory, and that this may require successful testing of the product. See Steenstrup v. Heath, 95 F.2d 514, 25 C.C.P.A., Patents, 981; McBride v. Teeple, Jr., 109 F.2d 789, 27 C.C.P.A., Patents, 961; Buffington et al. v. Blair et al., 121 F.2d 635, 28 C.C.P.A., Patents, 1382; and Schmutzer v. Ayers, 129 F.2d 703, 29 C.C.P.A., Patents, 1176.

The article made by the process here in issue is clearly of such a nature that tests would be necessary to determine whether or not it was satisfactory. The strength of the adhesive bond between the paper and the board, its durability, and its resistance to moisture in the atmosphere clearly could not be determined by inspection alone.

The Whitaker notebook entry, appellee's Exhibit No. 15, describes the making of two sets of samples, one set being made on March 22, 1935, and the other on March 25, 1935. The samples made on March 22, 1935, were evidently not considered satisfactory since the exhibit contains the statement " * * * Panel looks O. K. Thought to be too brittle. Try less resin and molding at 200# per sq. in." With

respect to those samples, the witness Whitaker testified that "If you were to take and bend the panel it would break. With a slight amount of bend it would be apt to crack." He further stated that he believed that Randall " * * * wanted some flexibility" in the product. Although the witness testified, in 1945, that the March 22, 1935, product would, in his opinion, have been " * * * all right, if it were held rigid and flat," it does not appear that any such use was contemplated in 1935. Furthermore, although it is stated in Exhibit No. 15 that two samples made on March 25, 1935, were " * * * sent to client" (Randall), it does not indicate that any of the March 22, 1935, samples were sent to him. This is significant in view of the testimony of the witness Whitaker that Randall took or was sent all samples " * * * that were at all good * * *." Finally, the fact that the procedure was immediately modified after the March 22, 1935, experiment affords clear evidence that the results were not regarded as satisfactory at that time.

The experiments on March 25, 1935, were performed on samples 5 by 10 inches in size. With respect to some of the samples made on that day, the notebook—Exhibit No. 15—contains the entry "* * * did not stick," but the final entry is "* * * Stick O. K. and flexibility much better than when molded at 500#. Made two samples by this procedure to be sent to client." It is the samples last mentioned which are principally relied on by appellee, and the Board of Interference Examiners held the making of those samples amounted to a reduction to practice of the invention in issue.

The record fails to establish that any specific test was ever applied to the March 25, 1935, samples and it is, therefore, not clear what the basis was for the entry "* * * Stick O. K. * * *." However, with respect to a similar entry "panel O. K.", appearing in the notebook record—Exhibit No. 36—of an experiment performed in 1938, the witness Whitaker testified that the basis of his judgment was "Just by feeling, and perhaps bending the panel—just inspection." It, therefore, appears from the record that nothing more

than this was done to the samples made in March 1935. Certainly there is no basis in the record for holding that any actual test was made on the strength or other properties of the adhesive bond in those samples. Since, as hereinbefore pointed out, a reduction to practice of the instant invention required a satisfactory testing of the product, the lack of evidence of such testing would, alone, be fatal to appellee's claim of reduction to practice on the basis of the March 25, 1935, experiments.

Moreover, the panels produced on March 25, 1935, were not of a size adapted for any practical use, but were merely samples, 5 by 10 inches in size. Even in those cases where tests of an article have been considered unnecessary in order to establish a reduction to practice, it has been held that the device relied on for reduction to practice must be a completed device capable of actual use and not a mere model or experiment. See Lindemeyr v. Hoffman, 18 App.D.C. 1, 1901 C.D. 353, and Gallagher v. Hien, 25 App.D.C. 77, 68 L.R.A. 272, 1905 C.D. 624. Accordingly, even if a paper covered board of the type with which the invention in issue is concerned could be considered as being of such a nature that it could be reduced to practice without testing, still a reduction to practice of the article or of the method of making it could not be effected by merely making samples such as those of March 25, 1935, which were not of such size as to be capable of any practical use.

Finally, the conduct of appellee after the March 25, 1935, experiments was such as to negative the claim that the results were satisfactory. Following those experiments, appellee appears to have laid aside the idea of using resin-coated paper and to have experimented with non-resinous adhesives. It is urged by counsel for appellee that high cost of materials prevented the adoption of resins, but the cost must have been known before the experiments were undertaken, and it seems unlikely that resins would even have been tried if their cost had been considered prohibitive. Furthermore, the record contains evidence of various experiments with resin-impregnated papers after 1935. The performance of

such experiments indicates not only that resins were not considered too expensive, but that appellee was not satisfied with the results of his experiments in March 1935. The failure of appellee to file an application covering the invention in issue for more than seven years after the last-mentioned experiments also raises a strong presumption that the results of those experiments were not considered satisfactory.

For the reasons stated, we are of opinion that the Board of Interference Examiners was in error in according appellee a reduction to practice of the invention defined by the count in issue on March 25, 1935.

There is no corroborative evidence of experiments by appellee with a process corresponding to that called for by the count at any time after the March 1935 work of the witness Whitaker. The witness testified to some later experiments involving the use of paper having bakelite resin *mixed* with the paper fibers. Such an arrangement, however, does not satisfy the interference count, which calls for a superficial coating "of a fibrous web with a resinous binder." The superficial coating clearly requires a concentration of the coating material on or immediately adjacent the surface, and that limitation is not satisfied by a distribution of resin mixed with paper fibers.

The witnesses for appellee, Whitaker and Wigg, also described samples which were submitted by appellee but which they did not see made. It was admitted by the witness Wigg that he could not tell from inspection of those samples whether the paper used had been superficially coated or impregnated before the samples were made, and the witness Whitaker also testified that he did not, of his own knowledge, know that the paper in the samples which he saw was coated or impregnated with urea resin. The testimony of those witnesses as to those samples, therefore, is insufficient to prove that the samples were made by the process here in issue. Moreover, there is no evidence of actual testing of any of the various samples described by the witnesses and, accordingly, for reasons hereinbefore stated in connection with the March 25, 1935, experiments, none of those samples could form the basis of a reduction to practice of the invention in issue, even if it were established that they were made by the process set forth in the count.

It follows that appellee must be restricted, for reduction to practice, to the filing date of his application, December 5, 1942. He was, therefore, subsequent to appellant in reducing the invention to practice and, assuming that he was the first to conceive the invention in issue, he can prevail only if he exercised reasonable diligence from a time immediately prior to September 18, 1940, when appellant entered the field, until December 5, 1942, when appellee's application was filed.

There is no evidence to support a holding of such diligence on the part of appellee. So far as appears from the record, he was able, at any time during the critical period, to make articles by the process here in issue and to test them, and he was also able to file an application at any time during that period, if he desired to do so. Appellee failed to do either. Accordingly, we are of opinion, on the record presented, that appellant, contrary to the holding of the board, is entitled to an award of priority of the invention defined by the count in issue.

For the reasons stated, the decision of the Board of Interference Examiners is reversed.

Reversed.